IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-363-D

| | | |
|---|---|---|
| GLENN W. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SUNSTATES SECURITY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

On December 28, 2017, Turner ("Turner" or "plaintiff") filed an amended complaint against Sunstates Security LLC ("Sunstates" or "defendant") alleging discrimination on the basis of race, color, and sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., discrimination on the basis of race in violation of 42 U.S.C. § 1981, and discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 629 et seq. See Am. Compl. [D.E. 27]. On September 7, 2018, Sunstates moved for summary judgment [D.E. 38], filed a memorandum in support [D.E. 39], and filed exhibits [D.E. 39-1–39-4]. On September 28, 2018, Turner responded in opposition [D.E. 40] and filed a memorandum and affidavit [D.E. 41, 42]. On October 12, 2018, Sunstates replied [D.E. 43, 44], moved to strike in part one of Turner's affidavits [D.E. 45], and filed a memorandum in support [D.E. 46]. On November 1, 2018, Turner responded in opposition and filed a memorandum [D.E. 47, 48]. As explained below, the court denies Sunstates's motion to strike and grants Sunstates's motion for summary judgment.

I.

Sunstates is a private security company that operates in 25 states and has approximately 2,300 employees. See [D.E. 39] ¶ 1; Kleiman Aff. [D.E. 39-1] ¶ 2. On July 25, 2016, Sunstates hired Turner to work as a security guard at a construction site in Clayton, North Carolina. See [D.E. 39] ¶ 2; Kleiman Aff. [D.E. 39-1] ¶ 3. Turner is a 79-year old African American. See Turner Aff. [D.E. 40-1] ¶ 1. Rogelio Valencia ("Valencia"), an operations manager for Sunstates, interviewed and hired Turner. See [D.E. 39] ¶ 2; Valencia Aff. [D.E. 44] ¶¶ 1–2.

When Sunstates hired Turner, Turner confirmed that he read and understood Sunstates's policies, including Sunstates's policy concerning client keys. See [D.E. 39] ¶ 3; Ex. 1 [D.E. 39-1] 5–7; Ex. 2 [D.E. 39-1] 40–41. Under Sunstates's client key policy, security guards must "meticulously" account for keys used in performing their duties, "conduct a key inventory at the beginning of each shift," and immediately report missing keys to supervisors. [D.E. 39] ¶ 3; Ex. 2 [D.E. 39-1] 40. Security guards "found to be negligent in the area of key control may be subject to termination of employment." [D.E. 39] ¶ 3; Ex. 2 [D.E. 39-1] 41. Sunstates considers key security to be critical, with one Sunstates employee claiming that "the only thing more significant than key security is loss of life." [D.E. 39] ¶ 4; see [D.E. 39-3] 54–59. Sunstates uses three steps (its "corrective action procedure") to address employee performance issues or misconduct: verbal counseling, written warning, and final written warning. See Ex. 2 [D.E. 39-1] 50–51. Although supervisors ordinarily use this procedure, "[t]here may be situations ... in which the severity of [an] offense justifies the omission of one or more of the steps in the procedure." Id. at 50. Sunstates may also suspend an employee at any point if the employee threatens "the security, safety or service to the client, the client's employees or Sunstates['s] employees." Id. at 51.

2

On October 8, 2016, Turner left the Clayton construction site unattended even though the site supervisor, William "Matt" Sprayberry ("Sprayberry"), instructed Turner to remain on site. See Valencia Aff. [D.E. 44] ¶ 3. As a result, Turner received a final written warning. See id.; [D.E. 44-1]. On October 13, 2016, Sprayberry trained Turner concerning workplace policies. See [D.E. 39] ¶ 5.

On the night of November 12, 2016, Turner received a set of keys, the patrol vehicle keys and the client site keys, from the security guard whose shift had just ended, Kimberly Weeks ("Weeks"). See id. ¶ 6. When Weeks arrived to relieve Turner the following morning, Turner gave Weeks the patrol vehicle keys, but he could not locate the client site keys. See id. ¶ 7; Turner Aff. [D.E. 42] ¶¶ 8–10.[1] Turner claims that he "threw the site keys," which had been separated from the patrol vehicle keys, into the Sunstates patrol vehicle. Turner Aff. [D.E. 42] ¶ 6. Valencia and others searched for the keys, but they never found them. See [D.E. 39] ¶ 10; Turner Aff. [D.E. 42] ¶¶ 13–17. Turner and Sunstates dispute whether Valencia told Turner to go home and whether Turner orally informed his supervisors that he lost the keys. See [D.E. 41] ¶¶ 1–2; Turner Aff. [D.E. 42] ¶ 11. Valencia concedes that he may have told Turner that, depending on the circumstances, Sunstates might be able to find Turner another position at Sunstates. See Valencia Aff. [D.E. 44] ¶ 5; Turner Aff. [D.E. 42] ¶ 17.

After investigating the key loss, Valencia concluded that Turner was responsible for losing the client site keys. See Valencia Aff. [D.E. 44] ¶ 6. Sunstates terminated Turner for losing the client site keys, which cost Sunstates thousands of dollars to re-key the entire facility, and because he had already received a final written warning. See id. ¶¶ 6–7; [D.E. 39] ¶ 9. Sunstates claims that

---

[1] Turner claims that Weeks's boyfriend accompanied her, which would violate Sunstates's policies. See [D.E. 41] ¶ 4; [D.E. 42] ¶ 9; cf. [D.E. 39-1] 47.

it did not base the decision to terminate Turner on Turner's age, race, gender, or in retaliation for any action or statement. See [D.E. 39] ¶ 11. Sunstates alleges that two Sunstates employees took Turner's shifts: Bruno Nwachukwu, a 47-year-old black man, and Robert Davis, a 57-year-old white man. See [D.E. 39] ¶ 13. But see [D.E. 41] ¶ 10.

After Sunstates terminated Turner, Weeks continued to work for Sunstates despite some performance struggles. Specifically, another security guard, Brenda Waddell ("Waddell"), reported that Weeks was sleeping at her guard post. See Valencia Aff. [D.E. 44] ¶ 8. Weeks received verbal counseling for this infraction. See id. Valencia did not terminate Weeks, however, because Waddell lacked corroborating evidence of the alleged infraction. See id. On March 8, 2017, Weeks received a written warning for improperly checking in visitors to the site. See id. ¶ 9. On March 18, 2017, Weeks refused to take a random drug test, and Sunstates terminated her employment. See id. ¶ 10.

## II.

Sunstates moves to strike portions of Turner's affidavit [D.E. 45]. "An affidavit submitted in opposition to a summary-judgment motion must contain admissible evidence, and the affiant must have personal knowledge of the information contained in the affidavit." Velasquez v. Salsas & Beer Rest., Inc., No. 5:15-CV-146-D, 2017 WL 4322814, at *6 (E.D.N.C. Sept. 28, 2017) (unpublished); see Fed. R. Civ. P. 56(c)(4); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). "A court may only consider affidavits submitted on summary judgment when they present evidence that would be admissible if the affiant were testifying in court." Bostic v. Rodriguez, 667 F. Supp. 2d 591, 603 (E.D.N.C. 2009); see, e.g., Evans, 80 F.3d at 962. "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991); Bostic, 667 F. Supp. 2d at 603.

First, Sunstates challenges several paragraphs in Turner's affidavit, see [D.E. 42], as hearsay.

4

As for paragraph four, in which Turner states that Weeks told him that Sprayberry wanted the patrol vehicle keys and client site keys to be separated, see id. ¶ 4, this statement is not hearsay if offered to show Turner's state of mind. See Campbell v. Bos. Sci. Corp., 882 F.3d 70, 78 (4th Cir. 2018). Thus, the court denies Sunstates's motion to strike this statement. As for Turner's statement that Weeks arrived on November 13, 2016, accompanied by an unidentified male who "was indicated as her boyfriend," see [D.E. 42] ¶ 9, Turner does not specify how the man "was indicated" to be Weeks's boyfriend. Thus, the court cannot conclude that the assertion is hearsay and denies Sunstates's motion to strike this statement. As for Turner's statements that Valencia told Turner to go home and that Valencia would look for another work site for Turner, see id. ¶ 17, that Valencia told Turner that Turner had been terminated for leaving the Clayton site without notifying Sunstates of the missing keys, see id. ¶ 20, and that Valencia never told Turner that he fired Turner for losing the keys, see id. ¶ 22, Valencia allegedly made the statements while an employee of Sunstates on a matter within the scope of that employment relationship. Thus, Valencia's alleged statements to Turner are not hearsay. See Bostic, 667 F. Supp. 2d at 603; Fed. R. Evid. 801(d)(2)(D). Accordingly, the court denies Sunstates's motion to strike these statements.

Next, Sunstates argues that Turner lacks personal knowledge for five of his statements: (1) Turner's statement that the patrol vehicle keys and client site keys had not been separated before November 13, 2016; (2) Turner's statement that a video showed him tossing the client site keys into the patrol vehicle; (3) Turner's statement that he believed that the site keys should have remained in the patrol vehicle; (4) Turner's statements that Sprayer "was notified" of the missing keys and that Turner "was directed" to go home; and (5) Turner's statement that, on November 14, 2016, he returned to work "as directed." See id. ¶¶ 5–7, 11–12. As for the first two statements, the court disagrees that Turner lacks personal knowledge. As for the third statement, Turner's statement

5

merely goes to his belief that the keys should have remained in the vehicle. As for the fourth statement, Turner can testify that someone told him to go home. As for the fifth statement, Turner has personal knowledge of what he believed that his supervisor directed him to do. Thus, the court denies Sunstates's motion to strike these statements. Accordingly, the court denies Sunstates's motion to strike.

III.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient...." Id. at 252.; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Only factual disputes that affect the outcome

under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

In count one, Turner alleges that Sunstates terminated his employment because of his race in violation of Title VII. See Am. Compl. [D.E. 27] ¶¶ 19–25; 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff can show through direct evidence that his employer fired him because of his race. See, e.g., Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005). If a plaintiff lacks direct evidence of race discrimination, a plaintiff can proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

Turner lacks direct evidence of racial discrimination and proceeds under the burden-shifting framework established in McDonnell Douglas. See, e.g., Turner Dep. [D.E. 39-4] 31–32.[2] Under McDonnell Douglas, a plaintiff must first establish a prima facie case of race discrimination by showing that (1) he is a member of a protected class; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of his discharge; and (4) the discharge occurred under circumstances permitting a reasonable inference of race discrimination. See, e.g., Hill, 354 F.3d at 285; Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); Ricketts v. Logics, LLC, No. 5:15-CV-

---

[2] Turner never heard negative comments concerning his race while at Sunstates. See [D.E. 39] ¶ 12. However, Waddell, who is black, testified that Sprayberry criticized President Obama for not paying sufficient attention to white military members and that Sprayberry generally did not like President Obama. See [D.E. 40-3] 34–36; [D.E. 41] ¶ 12. Sprayberry's criticism of President Obama is not direct evidence of race discrimination in Sunstates's decision to terminate Turner's employment. See Hill, 354 F.3d at 303; Cherry v. Elizabeth City St. Univ., 147 F. Supp. 3d 414, 421–22 (E.D.N.C. 2015); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

7

293-D, 2017 WL 4293406, at *3 (E.D.N.C. Sept. 27, 2017) (unpublished); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 331 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished). In a discriminatory discharge claim, the fourth element generally requires that the employer fill the position with "a similarly qualified applicant outside the protected class." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); see Miles v. Dell, Inc., 429 F.3d 480, 485–89 (4th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that it terminated the plaintiff "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the defendant meets its burden with admissible evidence, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the [defendant]'s stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King, 328 F.3d at 150–54. A plaintiff can prove pretext by showing that the defendant's nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147.

As for Turner's prima facie case, he is a member of a protected class, and Sunstates terminated his employment. Sunstates argues, however, that Turner was not fulfilling its legitimate expectations at the time of his discharge, citing Turner's violation of Sunstates's key security policy. In mitigation, Turner claims that he notified Sprayberry and Weeks that he lost the client site keys and that losing the keys is not negligent. Regardless of who Turner notified, losing the client site

8

keys violated Sunstates's key security policy. See [D.E. 39-1] 40–41; cf. Valencia Dep. [D.E. 39-2] 63; Moran Dep. [D.E. 39-3] 29. Because Turner violated Sunstates's key security policy, Turner was not fulfilling Sunstates's legitimate expectations. See, e.g., Jackson v. Ne. Ill. Univ., 24 F. App'x 590, 593 (7th Cir. 2001) (per curiam) (unpublished); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). Moreover, although Turner argues that another employee separated the client site keys and the patrol vehicle keys, thereby causing them to be lost, Valencia determined that Turner was responsible for losing the client site keys. See Valencia Aff. [D.E. 44] ¶ 6. In evaluating whether an employee was meeting an employer's legitimate expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Hawkins, 203 F.3d at 280 (alteration and quotation omitted); see King, 328 F.3d at 149; Evans, 80 F.3d at 960–61; Howard, 262 F. Supp. 3d at 332 (collecting cases). Finally, although Turner claims that Sunstates's expectations were not legitimate because it should have used technology to prevent employees from losing keys, the court does not "sit as a super-personnel department" to decide whether an employer should have placed GPS tracking devices on client site keys. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (quotation omitted); DeJarnette v. Corning, 133 F.3d 293, 299 (4th Cir. 1998). Accordingly, even viewing the record in the light most favorable to Turner, no rational jury could conclude that Turner was meeting Sunstates's legitimate expectations at the time of his discharge.

The same-actor inference supports this conclusion. Valencia hired Turner in August 2016 and fired Turner in November 2016. See Valencia Dep. [D.E. 39-2] 7, 11, 44; Moran Dep. [D.E. 39-3] 26–28.[3] Under the same-actor inference, when one individual hires and fires a plaintiff, a

---

[3] Although Ryan Moran, as "final approver," reviewed whether Valencia "took the proper steps" in deciding to terminate Turner, Valencia was the ultimate decisionmaker. See Moran Dep. [D.E. 39-3] 26.

9

"strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991); see Taylor v. Va. Union Univ., 193 F.3d 219, 231 (4th Cir. 1999) (en banc), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Evans, 80 F.3d at 959; Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 214–15 (4th Cir. 1994); Huckelba v. Deering, No. 5:16-CV-247-D, 2016 WL 6082032, at *4 (E.D.N.C. Oct. 17, 2016) (unpublished). Even viewing the record in the light most favorable to Turner, no rational jury could conclude that the same person who hired Turner would terminate him less than four months later based on his race.

Alternatively, even assuming that Turner established a prima facie case, Sunstates had a legitimate and nondiscriminatory explanation for discharging Turner: Turner's violation of Sunstates's key security policy. See, e.g., Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc); Mungro v. Giant Food, Inc., 187 F. Supp. 2d 518, 523 (D. Md. 2002); Cross v. Bally's Health & Tennis Corp., 945 F. Supp. 883, 887 (D. Md. 1996). Accordingly, the burden shifts to Turner to prove that Sunstates's explanation was a pretext for race discrimination. See Reeves, 530 U.S. at 143; King, 328 F.3d at 150–54.

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that" the alleged illegal discrimination did not occur. Reeves, 530 U.S. at 148. Moreover, a plaintiff's own assertions of discrimination are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for a discharge. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Iskander v. Dep't of the Navy, 116 F. Supp. 3d 669, 678–79 (E.D.N.C. 2015), aff'd, 625 F. App'x. 211 (4th Cir. 2015) (per curiam) (unpublished). Furthermore, an employer lawfully can rely on poor performance in taking

10

adverse employment action. See Mereish, 359 F.3d at 335; Hawkins, 203 F.3d at 280; Fisher v. Asheville-Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469–70 (W.D.N.C. 1993), aff'd, 25 F.3d 1039 (4th Cir. 1994) (per curiam) (unpublished table decision). Turner does not offer any evidence that creates a genuine issue of material fact concerning pretext. See, e.g., Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989); Iskander, 116 F. Supp. 3d at 678–79. Thus, even viewing the record in the light most favorable to Turner, no rational jury could find that Sunstates's legitimate, nondiscriminatory explanation for terminating Turner was a pretext for race discrimination. Accordingly, the court grants Sunstates's motion for summary judgment concerning Turner's race discrimination claim.

B.

In count two, Turner alleges that Sunstates subjected Turner to more severe discipline than a similarly-situated employee of a different race in violation of Title VII. See Am. Compl. [D.E. 27] ¶¶ 26–29. "To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII," a plaintiff must show that (1) he is a member of a protected class; (2) the prohibited conduct in which he engaged was comparable in severity to the misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against him were more severe than those enforced against other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); see Hurst v. Dist. of Columbia, 681 F. App'x 186, 190 (4th Cir. 2017) (per curiam) (unpublished); Brown v. Goodwill Indus. of E. N.C., Inc., 361 F. Supp. 3d 558, 563 (E.D.N.C. 2019); Witherspoon v. Norfolk S. Corp., No. 5:06-CV-469-D, 2008 WL 516737, at *5 (E.D.N.C. Feb. 25, 2008) (unpublished); Simmons v. G.E.O. Grp., Inc., 528 F. Supp. 2d 583, 586 (E.D.N.C. 2007).

Turner is a member of a protected class. As for disciplinary severity, Turner contends that

11

losing client site keys is comparable in severity to Weeks allegedly sleeping while on duty. In support, Turner notes that Valencia testified that key loss or sleeping on duty were both examples of terminable offenses. See Valencia Dep. [D.E. 39-2] 63–64. The court rejects Turner's argument. Valencia explained that he did not discharge Weeks because such a violation "does not result in immediate termination absent some corroborating proof of violation other than a co-worker's hearsay statement." Valencia Aff. [D.E. 44] ¶ 8. Even viewing the record in the light most favorable to Turner, no rational jury could conclude that Turner's misconduct was comparable in severity to Weeks's alleged misconduct. See Cook, 988 F.2d at 511–12; Witherspoon, 2008 WL 516737, at *5–6; Simmons, 528 F. Supp. 2d at 586. Thus, Weeks is not an appropriate comparator, and the court grants Sunstates's motion for summary judgment concerning Turner's disparate discipline claim.

C.

In count two, Turner also alleges a color discrimination claim under Title VII. See Am. Compl. [D.E. 27] ¶¶ 27–28. "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 n.5 (4th Cir. 2002); see Daniels v. James Lawrence Kernan Hosp., Inc., WMN-15-255, 2015 WL 5735397, at *3 (D. Md. Sept. 29, 2015) (unpublished). "Little authority exists defining the contours" of a color discrimination claim. Williams v. Alhambra Sch. Dist. No. 68, 234 F. Supp. 3d 971, 980 (D. Ariz. 2017). In any event, even viewing the record in the light most favorable to Turner, no rational jury could conclude that Sunstates discriminated against Turner because of his color. Thus, the court grants Sunstates's motion for summary judgment concerning Turner's color discrimination claim.

12

D.

In count three, Turner alleges that Sunstates discriminated against him because of his sex in violation of Title VII. See Am. Compl. [D.E. 27] ¶¶ 30–33. In relevant part, Title VII forbids employers to discharge or to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).

Turner lacks direct evidence of sex discrimination. Thus, Turner must show that (1) he is a member of a protected class, (2) he suffered adverse employment action, (3) his performance met his employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination. See Hill, 354 F.3d at 285; Boney v. Trs. of Cape Fear Cmty. Coll., 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019) (collecting cases); Howard, 262 F. Supp. 3d at 331; McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 611 (E.D.N.C. 2006).

Turner's sex discrimination claim fares no better than his race discrimination claim. Turner cannot establish that he was meeting Sunstates's legitimate expectations at the time of his discharge. Moreover, given that Sunstates replaced Turner with one or two male employees, Turner's discharge did not occur under circumstances that permit a reasonable inference of sex discrimination. Furthermore, the same-actor inference dooms any inference that Valencia discharged Turner because of his sex.

Alternatively, Turner failed to offer evidence that creates a genuine issue of material fact concerning whether Sunstates's legitimate and nondiscriminatory explanation for terminating his employment is pretextual. Even viewing the record in the light most favorable to Turner, no rational jury could conclude that Sunstates discharged Turner because of his sex. Thus, the court grants

Sunstates's motion for summary judgment concerning Turner's sex discrimination claim.

E.

In count four, Turner alleges that Sunstates discharged Turner in retaliation for Turner's inquiry to human resources on November 17, 2016, asking whether he still had a job or for Turner's decision to report a security violation by Weeks. See Am. Compl. [D.E. 27] ¶¶ 34–38. Turner lacks direct evidence of retaliation and proceeds under the burden-shifting framework. Thus, Turner must establish that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him that a reasonable employee would find materially adverse; and (3) a causal connection existed between the protected activity and the adverse employment action. See Ray v. Int'l Paper Co., 909 F.3d 661, 669 (4th Cir. 2018); Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fountainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013).

In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII protects two kinds of activities: opposition and participation. See id.; Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Laughlin, 149 F.3d at 259. An "employee is protected when [he] opposes not only employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful [under

14

Title VII]." DeMasters, 796 F.3d at 417 (quotation and alteration omitted); Boyer-Liberto, 786 F.3d at 282. Participation activity is defined in Title VII as "making a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Laughlin, 149 F.3d at 259.

As for Turner's inquiry to Sunstates's human resources department on November 17, 2016, Turner's call only concerned whether he still had a job at Sunstates. See Turner Aff. [D.E. 42] ¶ 19; Ex. 1 [D.E. 42-1]. Turner's call to human resources did not concern any action that was unlawful under Title VII or concern anything that Turner could reasonably believe to be unlawful under Title VII. Thus, the call does not constitute protected activity under Title VII. See, e.g., Brown, 361 F. Supp. 3d at 563. The same conclusion applies to Turner's alleged complaint that Weeks committed a security violation.

Alternatively, even viewing the record in the light most favorable to Turner, no rational jury could conclude that Turner's call on November 17, 2016, or his complaint about Weeks was causally connected to Valencia's decision to terminate Turner. See, e.g., Nassar, 570 U.S. at 562–63; Blomker v. Jewell, 831 F.3d 1051, 1059 (8th Cir. 2016). Thus, the court grants Sunstates's motion for summary judgment concerning Turner's Title VII retaliation claim.

F.

In count five, Turner alleges that Sunstates engaged in race discrimination against him in violation of 42 U.S.C. § 1981. See Am. Compl. [D.E. 27] ¶¶ 39–45. Section 1981 creates a cause of action against private parties who deprive others of the power to make and enforce contracts on the basis of race. See 42 U.S.C. § 1981; Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459–60 (1975). Purposeful, racially discriminatory actions that impair an employment contract violate section 1981. Bryant, 288 F.3d at 133 & n.7; Spriggs v. Diamond Auto Glass, 165 F.3d 1015,

15

1018–19 (4th Cir. 1999); Benjamin v. Sparks, 173 F. Supp. 3d 272, 282 (E.D.N.C. 2016).

Turner lacks direct evidence of race discrimination. Thus, Turner proceeds under the McDonnell Douglas burden-shifting framework. See, e.g., Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543–45 (4th Cir. 2003); Benjamin, 173 F. Supp. 3d at 282. However, Turner's section 1981 race discrimination claim fails for the same reasons that his Title VII race discrimination claim fails. Accordingly, the court grants Sunstates's motion for summary judgment concerning Turner's section 1981 race discrimination claim.

G.

In count six, Turner alleges that Sunstates discriminated against him because of his age in violation of the ADEA. See Am. Compl. [D.E. 27] ¶¶ 46–50. The ADEA forbids employers to discharge any individual because of such individual's age. See 29 U.S.C. § 623(a)(1). Turner lacks direct evidence of age discrimination.[4] Thus, Turner proceeds under the McDonnell Douglas framework. See Mereish, 359 F.3d at 334; Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 739–40 (E.D.N.C. 2012).

To establish a prima facie case of age discrimination under the McDonnell Douglas

---

[4] Turner cites Sprayberry's alleged statement to Waddell that Turner was an older man as direct evidence of age discrimination. Sprayberry, however, was not the decisionmaker, and courts must "be cautious about attributing to any ultimate decision maker . . . [the] unfortunate expressions and beliefs of those around" that person. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010); see, e.g., Cherry, 147 F. Supp. 3d at 421–22; Holley, 846 F. Supp. 2d at 427. "[T]o survive summary judgment, an aggrieved employee who rests a discrimination claim under . . . the ADEA" upon a co-worker's animus "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Hill, 354 F.3d at 291. Turner does not offer any evidence that Sprayberry, the site supervisor, had a role in Valencia's decision to discharge Turner. Cf. Valencia Dep. [D.E. 39-2] 7, 11, 44. Turner also does not offer evidence that Valencia heard this isolated and ambiguous statement, that Sprayberry or others repeated it to Valencia, or that any nexus exists between the statement and Valencia's decision. See, e.g., Merritt, 601 F.3d at 300; Brinkley v. Harbour Rec. Club, 180 F.3d 598, 608 (4th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

16

framework, Turner must prove that (1) he was in the age group protected by the ADEA; (2) he was discharged; (3) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) after his discharge, he was replaced by someone of comparable qualifications who was substantially younger. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Wood, 914 F. Supp. 2d at 740.

Even viewing the record in the light most favorable to Turner, Turner cannot establish that he was meeting Sunstates's legitimate expectations when he was discharged. Alternatively, Sunstates has offered a legitimate, nondiscriminatory explanation for its decision to discharge Turner, and Turner has failed to create a genuine issue of material fact concerning pretext. Furthermore, the same-actor inference undermines his ADEA claim. Finally, Turner cannot "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009); see Reeves, 530 U.S. at 141–42; Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 234 (4th Cir. 2016); Equal Emp't Opportunity Comm'n v. Balt. Cty., 747 F.3d 267, 273 (4th Cir. 2014); Wood, 914 F. Supp. 2d at 740. Accordingly, the court grants Sunstates's motion for summary judgment concerning Turner's ADEA claim.

IV.

In sum, the court DENIES Sunstates's motion to strike [D.E. 45] and GRANTS Sunstates's motion for summary judgment [D.E. 38]. Sunstates may file a motion for costs in accordance with this court's local rules and the Federal Rules of Civil Procedure. The clerk shall close the case.

SO ORDERED. This 22 day of July 2019.

/s/ J. Dever
JAMES C. DEVER III
United States District Judge

17